FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 26, 2022

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEWAYNE JUHNKE, an individual, and JOHN DRUMMOND, an individual,<br><br>       Plaintiffs,<br><br> v.<br><br>CITY OF WEST RICHLAND,<br><br>       Defendant. | NO:  4:20-CV-05241-RMP<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION |

  BEFORE THE COURT are cross-Motions for Summary Judgment by Plaintiffs DeWayne Juhnke and John Drummond, ECF No. 10, and Defendant City of West Richland, ECF No. 24.  Having heard oral argument, reviewed the parties' briefing and submitted materials, and the relevant law, the Court is fully informed.

## BACKGROUND

  Although the parties object to each other's statements of fact to the extent that they contain legal conclusions, the parties agree that the material facts are

undisputed.  *See* ECF Nos. 19 and 29.  Therefore, all facts that follow are undisputed unless otherwise noted.

### *General Context*

The Federal Small Tract Act of 1938 (the "STA") authorized the United States Secretary of the Interior to sell or lease certain federally owned lands up to five acres in size through the issuance of federal land patents.  The United States Department of the Interior Bureau of Land Management ("BLM") administered the STA.  *See* ECF No. 21-1 at 2.

When lands were found suitable to be classified as small tracts, the BLM issued a classification order.  *See* ECF No. 20-1 at 33.  On August 10, 1954, the BLM issued Classification Order No. 5 for the lease or sale of land located in Sections 6 and 8 of an area known as Willamette Heights.  ECF No. 21-1 at 2.  Classification Order No. 5 provided that access to public highways from tracts classified by the Order that were sold or leased would "be afforded by a reservation of rights of way along the boundary of each tract for road or public utility facilities which will not exceed 33 feet in width . . . ."  ECF No. 21-1 at 2; *see also* ECF Nos. 20-6 at 2; 20-7 at 2 at 2.

The City of West Richland (the "City") was incorporated on June 17, 1955.  ECF Nos. 12-5 at 2; 12-6 at 2.  At or around the time of incorporation, the City encompassed Section 6 and a portion of section 8 of Willamette Heights.  *Id.*

The Federal Land Policy and Management Act of 1976 (the "FLPMA") repealed the STA as well as other laws that provided for disposal of public lands. In a termination notice dated November 18, 1981 (the "Termination Notice"), the BLM terminated Classification Order No. 5. ECF No. 13-7 at 3. The Termination Notice recognized that: "By Small Tract Classification Order No. 5 . . . the following described land was classified for lease and sale for homesite and business site purposes pursuant to the Small Tract Act . . . : Willamette Meridian T. 9 N., R. 28 E., Sec. 6, Lots . . . 58-144 inclusive . . . ." *Id.* The Termination Notice further stated that: "[t]he Small Tract Act has been repealed"; "the classification is no longer applicable and is terminated upon publication of this notice in the Federal Register"; and that the land included in Classification Order No. 5, except as otherwise provided, "had been conveyed from United States ownership and will not be restored to operation of the public land laws, including the mining laws and mineral leasing laws." *Id.*

Mr. Drummond and his wife Susan Drummond purchased Lot 121 in 1992. ECF No. 20-3 at 6.[1] Mr. Juhnke and his wife Jane Juhnke purchased Lot 123 in 2013. ECF No. 20-2 at 7. Both lots are within the jurisdictional limits of the City of West Richland, in Willamette Heights Section 6. *See* ECF Nos. 12-3 at 2; 13-6 at 2.

---

[1] After Ms. Drummond died, Mr. Drummond executed a quit claim deed conveying Lot 121 to himself as his separate estate, recording the deed on May 27, 2014. ECF No. 12-2 at 2.

The land patents that conveyed title from the United States to the original buyers of Lots 121 and 123 in 1958 and 1956, respectively, provided that the patents were "subject to a right-of-way not exceeding 33 feet in width, for roadway and public utilities purposes" along the boundaries of the lots. *See* ECF Nos. 12-3 at 2; 13-6 at 2.

The City does not dispute that it did not use the rights of way across Lots 121 and 123 prior to 1981. *See* ECF Nos. 11 at 14; 19 at 18. However, presently, a City-owned waterline, as well as telephone, electrical, and cable facilities are located within the alleged right-of-way area along the northern boundary of Lot 123. ECF Nos. 19 at 15; 20-2 at 47; and 29 at 14

### BLM Statements

In 1980, the Director's office of the BLM issued Instruction Memorandum 80-540 and an associated publication, "The Small Tract Act: A Guidebook for Managing Existing Small Tract Areas." ECF No. 20-1 at 2. The Memorandum was signed by the Acting Assistant Director of Lands and Rights-of-Way, whose signature is illegible. *Id.* The Guidebook was developed as a Bureau-wide resource for management of land classified under the STA. *Id.* The Guidebook addresses how BLM should address the small tract classification review process that it was undertaking at the time and provides: "The revocation of small tract classification is tied closely to such factors as the permanent reservation of easements to patented small tracts, and the clearance of trespass. In revoking classification orders, or

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION ~ 4

otherwise disposing of public lands, <u>the Bureau must assure that access for roads and utilities is reserved to patented small tracts</u>." *Id.* at 46 (emphasis in original). The same Guidebook advises, with respect to what types of covenants the BLM should include "with sale tracts":

> Generally, there should be few if any restrictions in the patent. An exception would be right-of-way reservations. A title should be as clear as possible to avoid unnecessary—and sometimes impossible—compliance efforts by Bureau personnel. Depend upon local codes and ordinances to accomplish desired development. Lacking adequate local control, do not sell.

*Id.* at 52.

In 1991, the BLM Director issued Instruction Memorandum 91-196 addressing the subject of "Easements Reserved in Small Tract Act Leases and Patents" in recognition that "the issue of reserved rights-of-way (or easements) on Small Tract Act leases or patents" had been "the subject of debate for a number of years." ECF No. 14-2 at 2. The Memorandum was signed by Assistant Director for Land and Renewable Resources, Michael J. Penfold. *Id.* at 5. The author of Memorandum 91-196 framed the document as "an attempt to consolidate previously issued guidance and to provide policy and procedure when Small Tract Act rights-of-ways [sic] are encountered." *Id.* at 2. Memorandum 91-196 noted that "It is generally accepted that small tract rights-of way are common law dedications to the public to provide ingress and egress to the lessees or patentees and to provide access for utility services." *Id.* Memorandum 91-196 continued: "When small tract

classifications are terminated, the common law right-of-way dedication disappears to the extent that it was not accepted by actual use." *Id.* at 3. Memorandum 91-196 did not cite any authority for this proposition. In addition, Memorandum 91-196 advised:

> Upon issuance of a small tract patent, the Secretary is deprived of all rights to the lands except those specifically reserved to the United States. Under a common law dedication, fee title lies with the owner of the land subject to the easement of the public for the use of the land. The government transfers all its interest in and jurisdiction over the lands as completely as if the patent had been made subject to a right-of-way in favor of a named holder of such right-of-way. The government has no legal power, except under eminent domain proceedings for some governmental purpose, to eliminate this restriction from the patent.

*Id.* at 4.

In a letter dated January 2, 2003, District Manager of BLM's Spokane District Office, Joseph Buesing, addressed the City of West Richland regarding a "proposed vacation of rights reserved in United States (US) Patents" for several Willamette Heights small tract lots, but not the lots currently owned by Plaintiffs. ECF No. 14-3 at 2. Mr. Buesing wrote, in relevant part:

> The US Patents issued for the [several Small Tract Lots in Willamette Heights] were issued subject to rights-of-way (r/w) for roadway and public utilities purposes along one or more boundaries of certain lots. These r/w's are patent reservations, not easements. The US reserved unto itself these rights for use by any federal, state, county, or municipal government or instrument thereof, or for use by any private or corporate entity, or individual, for roadway and utilities purposes in perpetuity. . . . The City of West Richland may of course vacate any interest acquired, and verifiable, through a chain of title subsequent to the

issuance of the federal patents.  However, vacation of any such interest by the City will not alter or extinguish the federal reservation.

*Id.*

In a letter dated March 31, 2009, District Manager of BLM's Spokane District Office, Robert Towne, again addressed the treatment of patent reservations on small tracts in the Willamette Heights area.  ECF No. 14-4 at 2.  Mr. Towne wrote to a staff member of a Washington State Representative, in relevant part:

> The majority of the 2.5 acre lots in the Willamette Heights area were created and some were classified under the Small Tract Act (STA) of June 1, 1938, as amended (43 U.S.C. Sec. 682(a)).  The STA in itself did not establish or reserve rights-of-way along the boundaries of the patented lots. However, the Secretary of the Interior did assert authority to include this provision in the STA patents. The provision reserves an easement, not to exceed 33 feet, for ingress and egress for patentees, and provides access for utility services. The City of West Richland has demonstrated the value of these easement reservations by utilizing the 33-foot corridors extensively in creating city streets and utility corridors. We are currently analyzing an application from the City to widen these corridors from 33 feet to 40 feet on the lots that still remain under BLM jurisdiction.
>
> Once lands are patented the BLM has no legal authority to eliminate the reservation in the patents. Over the years, various owners of these STA lots have petitioned the City of West Richland and Benton County to vacate these reservations. In the past, these municipalities have agreed to the vacation, which causes confusion since the City or County cannot remove the Federal reservation. The attached Department of the Interior Solicitor's opinion states ". . . any question concerning the transfer or release of rights in the patented lands would be subject to determination in the local courts under state law."
>
> At this point in time, the BLM does not have the authority to vacate these patent reservations.

*Id.*

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION ~ 7

In a letter dated February 8, 2017, Border Field Manager of BLM's Spokane District Border Field Office, Lindsey Babcock, responded to an inquiry about how to vacate a portion of a right-of-way across a patented small tract in Section 6.  ECF No. 14-5 at 2.  Ms. Babcock referred to Instruction Memorandum 91-196 and repeated its assertion "that the Small Tract Act of 1938 did not establish or reserve rights-of-way in leases or patents, but created a common law dedication that 'disappeared' if the rights-of-way were not accepted by 'actual use' before classification was terminated."  *Id.*  Ms. Babcock continued: "Upon termination of the classification order, the US released all interest in the lands to the patentee subject to any right-of-way for road or public utilities that may have been established prior to termination.  If no such right-of-way was established prior to termination on November 18, 1981, the reservation language became null and void, and no right-of-way exists."  *Id.*  Ms. Babcock refers only to Instruction Memorandum 91-196 as authority for her assertions that lack of actual use before the termination of classification would result in the dedication "disappearing" upon issuance of the Termination Notice.  *See id.*

### *City of West Richland's Review and Acceptance of Reservations*

In 2018, the City initiated a review of the legal status of the right-of-way reservations in Willamette Heights Sections 6 and 8.  *See* ECF No. 21-4.  In approximately November 2019, the City held a public hearing regarding the small

tract right-of-way reservations.  *See* ECF Nos. 12-4 at 2–3; 21-4 at 13.  The hearing

announcement invited interested residents to review "exhibits for each lot in

Willamette Heights Sections 6 & 8 within West Richland's city limits showing the

portions of the BLM offers of dedication the City formally plans on accepting for the

City's existing and planned roadways and infrastructure."  ECF No. 21-4 at 13.

On March 17, 2020, the City adopted Ordinance 10-20, which purports to

accept some of the small tract patents' offers of dedication and declines others.  ECF

No. 13-12.  Through Ordinance 10-20, the City asserted that it was accepting the

offer of dedication for 33-foot rights-of-way along the boundaries, in whole or in

part, of Lots 121 and 123.  *See* ECF Nos. 12-7 (Lot 121) and 13-13 (Lot 123).

### *Procedural History*

Plaintiffs filed a Complaint in Benton County Superior Court on November

24, 2020, alleging an unconstitutional taking and inverse condemnation in violation

of the Fifth and Fourteenth Amendments of the U.S. Constitution and the taking

procedure set forth by 40 U.S.C. §§ 3111-3118.  ECF No. 1-1 at 10–11.  Plaintiffs

also allege that the Defendant has breached "a number of obligations . . . under the

eminent domain laws of the State of Washington including, without limitation,

obligations pursuant to [Revised Code of Washington ("RCW")] 8.12 et seq." and

the Washington State Constitution, art. I, § 16.  *Id.* at 10.  Plaintiffs seek a

"declaratory judgment pursuant to RCW 7.24.020 that any interest held in the

Properties by the United States of America, or any alleged or actual common law

offers of dedication on the Properties has been terminated and or abandoned by the United States of American [sic] and the State of Washington and are no longer available for 'acceptance'" by Defendant City of West Richland without just compensation[.]" *Id.* at 11. Plaintiffs also seek a judgment, and pre- and post-judgment interest, for the amount of just compensation for the alleged wrongful taking of their properties "pursuant to RCW 8.12 et seq., RCW 8.25 et seq., RCW 8.26.210, RCW 47.50.010(5), 42 U.S.C. § 1283, or other applicable law[.]" *Id.*

Defendant removed Plaintiffs' Complaint to this Court on December 8, 2020, on the basis of federal question jurisdiction. ECF No. 1; *see* 28 U.S.C. §§ 1331, 1441(a).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party

meets this challenge, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." *Id*. at 324 (internal quotations omitted). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Courts evaluate cross-motions for summary judgment separately under the same standard. *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). If the non-movant's opposition fails to cite specifically to evidentiary materials, the Court need not search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988).

## DISCUSSION

Plaintiffs argue that the rights-of-way across their properties were not established before the Termination Notice issued on November 18, 1981, and the City cannot resurrect the rights-of-way now. Plaintiffs further argue that the Court should defer to the interpretations by the BLM as expressed in Instruction Memorandum 91-196 and in Mr. Buesing's January 2, 2003 letter; Mr. Towne's

March 31, 2009 letter; and Ms. Babcock's February 8, 2017 letter.  *See* ECF Nos. 14-3, 14-4, and 14-5.  Plaintiffs maintain that a 2013 Alaska Supreme Court decision is the "only authority providing in-depth consideration of the reserved [rights-of-way] found within federal land patents issued under the Small Tract Act" and that the decision supports giving deference to BLM's Instruction Memorandum 91-196.  ECF No. 30 at 7–8 (citing *McCarrey v. Kaylor*, 301 P.3d 559, 568 (2013), and characterizing that case as turning on whether the offer of dedication was accepted through use).  Plaintiffs maintain that deference to Instruction Memorandum 91-196 and the subsequent letters is appropriate while acknowledging that deference is not mandatory.  *See* ECF No. 10 at 13–14 (citing *McMaster v. U.S.*, 731 F.3d 881, 892 (9th Cir. 2013) (quoting *Skidmore v. Swift*, 323 U.S. 134, 139–40 (1944)), to support that there is precedent in the Ninth Circuit for granting *Skidmore* deference to BLM solicitor's opinions "proportional to [their] 'power to persuade.'")

The City considers the reservations of rights-of-way contained in the land patents issued pursuant to the STA and Classification Order No. 5 as offers of dedication under Washington state law that can be accepted or declined.  The City disputes that there is any legal support for Plaintiffs' proposition that the offers of dedication disappeared upon issuance of the Termination Notice and instead asserts that the Termination Notice had no effect on the reservation of rights-of-way included in the land patents for Lots 121 and 123.  *See* ECF No. 19 at 5.  Moreover, citing *Keystone Bituminous Coal Ass'n v. DeBenedictus*, 480 U.S. 470 (1987), at

oral argument, the City argues that Ordinance 10-20 does not amount to a taking because it does not deprive Plaintiffs of all use of their properties or result in actual physical occupation of the property.  The City maintains that since Plaintiffs purchased their lots with the reservations plainly included in their title documents, the opportunity of the City to accept the offers of dedication does not change anything regarding the Plaintiffs' use of their property.

### *Federal Question Jurisdiction*

Although Plaintiffs' Complaint does not refer to 42 U.S.C. § 1983, Plaintiffs allege that the City breached its obligations to Plaintiffs and cite to the Fifth and Fourteenth Amendments of the U.S. Constitution as the source of their claim . *See* ECF No. 1-1 at 11.  Defendant removed Plaintiffs' Complaint to this Court, alleging that Plaintiffs had invoked federal question jurisdiction by raising a section 1983 claim for unconstitutional takings and inverse condemnation, and Plaintiffs agreed that federal question jurisdiction exists.  *See* ECF Nos. 1 at 2; 8 at 2.  The Court exercises supplemental jurisdiction over Plaintiffs' claim that Defendant violated the condemnation procedure under RCW ch. 8.12. and the Washington State Constitution, art. I, § 16, and Plaintiffs' request for a declaratory judgment under 7.24.020.  ECF No. 1-1 at 10.

### *Elements of Plaintiffs' Claims*

The Takings Clause of the Fifth Amendment to the U.S. Constitution declares that "private property" shall not "be taken for public use, without just

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION ~ 13

1  compensation." U.S. Const. amend. V.  The Supreme Court has recognized: "The

2  Takings Clause of the Fifth Amendment, applicable to the States through the

3  Fourteenth Amendment, . . . prohibits the government from taking private property

4  for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606,

5  617 (2001).

6       Plaintiffs seek relief for an alleged regulatory taking through the adoption of

7  Ordinance No. 10-20.  *See* ECF No. 36 at 15.  The Ninth Circuit recently has

8  outlined the complex contours of when a regulatory action amounts to a taking, and

9  the parties debate this framework at some length.  *Bridge Aina Le'a, LLC v. State*

10  *Land Use Comm'n*, 950 F.3d 610, 625–26 (9th Cir. 2020); *see* ECF Nos. 24 at 19;

11  36 at 14–15.  From a broad perspective, however, the Court observes that to

12  establish a takings claim under 42 U.S.C. § 1983, Plaintiffs must show (1) a property

13  interest; (2) that has been taken under the color of state law; (3) without just

14  compensation.  *See Sierra Med. Servs. Alliance v. Kent*, 883 F.3d 1216, 1223 (9th

15  Cir. 2018); *HBP Associates v. Marsh*, 893 F. Supp. 271, 277 (S.D.N.Y. 1995).  Prior

16  to 2019, a federal court . . . could not resolve a takings claims under section 1983

17  "unless or until the complaining landowner has been denied an adequate post-

18  deprivation remedy." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526

19  U.S. 687, 721 (1999).  However, the Supreme Court repudiated that requirement in

20  *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019).  Now, a takings claim is ripe

21  for review when Plaintiff can show that the challenged government decision is

"final." *Pakdel v. City & Cty. of San Francisco*, 141 S. Ct. 2226, 2228 (2021) (holding that plaintiff faces a "relatively modest" requirement of showing that "there is no question . . . about how the regulations at issue apply to the particular land in question.") (internal quotation omitted).

Washington state law on takings claims follows and parallels federal law. *Chong Yim v. City of Seattle*, 194 Wn.2d 651, 663 (Wash. 2019), *cert. denied* 206 L. Ed. 2d 826 (Apr. 20, 2020) (confirming that the Washington Supreme Court has "always attempted to discern and apply the federal definition of regulatory takings"); *see also Fowler v. Guerin*, No. C15-5367 BHS, 2021 U.S. Dist. LEXIS 137882, at *13 (W.D. Wash. July 23, 2021).

### *Deference*

The Court looks to federal law to determine whether the Termination Notice extinguished the rights-of-way contained in the federal patents already issued under the STA and Classification Order No. 5.  *See Idaho v. Hodel*, 814 F.2d 1288, 1293 (9th Cir. 1987) ("The construction of a federal patent is governed by federal law, and if federal law is silent Congress is presumed to have intended the conveyance to be construed according to the law of the state in which the land lies, unless a contrary congressional intent is shown.") (internal citations omitted); *Cupps v. Pioneer Canal-Lake Hattie Irrigation Dist.*, 799 Fed. Appx. 571, 585 (10th Cir. 2019) (holding that the "scope of a right-of-way created entirely by federal law[] is definitionally a question of federal law."); *see also* ECF No. 30 at 4

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S CROSS-MOTION ~ 15

1    (acknowledgment by Plaintiffs that "outside the construction of the Land Patents[,]

2    state law controls").

3        Where federal land patents are concerned, a well-established canon of

4    construction provides for looking to the clear language of the patent and resolving

5    any doubts in the government's favor. *See United States v. Union Pacific R.R. Co.*,

6    353 U.S. 112, 115–16 (1957). As a general rule, however, any reservation of

7    property rights must be explicitly stated and will not be implied. *See Hash v. United

8    States*, 403 F.3d 1308, 1314 (Fed. Cir. 2005) (citing *Swendig v. Washington Water

9    Power Co.*, 265 U.S. 322, 329, 331 (1924); *United States v. Schurz*, 102 U.S. 378,

10   397 (1880)). Any reservation of interest must occur before the land patent is

11   executed because a land patent "divests the government of title." *Boesche v. Udall*,

12   373 U.S. 472, 477 (1963).

13       Agency interpretations warrant judicial deference where the intent of

14   Congress, as expressed in a statute, is either silent or ambiguous and the agency's

15   interpretation is based on a permissible construction of the statute. *Chevron U.S.A.,

16   Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Interpretations

17   such as those in BLM opinion letters that lack the force of law are not entitled to

18   *Chevron* deference. *Christensen v. Harris*, 529 U.S. 576, 587 (2000). However,

19   even where *Chevron* deference does not apply, an agency action still may warrant

20   "'respect proportional to its 'power to persuade.'" *McMaster v. United States*, 731

21

F.3d 881, 892 (quoting *United States v. Mead Corp.*, 533 U.S. 218 (2001) (quoting

*Skidmore*, 323 U.S. at 140)).

Plaintiffs do not argue that any statutory language is ambiguous and do not

assert that *Chevron* deference is warranted.  *See* ECF No. 10 at 13–14.  Rather, they

seek deference to legal interpretations in agency documents under *Skidmore*.  *See id*.

Prior to the termination of Classification Order No. 5, the BLM's Director's

office issued Instruction Memorandum 80-540 and the attached Guidebook as a

Bureau-wide resource for managing existing small tract areas and advised that "[i]n

revoking classification orders, or otherwise disposing of public lands, the Bureau

must assure that access for roads and utilities is reserved to patented small tracts."

ECF No. 20-1 at 46 (emphasis in original).

A decade later, the BLM's Director's office issued Instruction Memorandum

91-196, which reaffirmed that small tract rights-of-way are common law dedications

to the public and that "[w]hen small tract classifications are terminated, the common

law right-of-way dedication disappears to the extent that it was not accepted by

actual use."  ECF No. 14-2 at 3.

Plaintiffs primarily rely on Instruction Memorandum 91-196 to assert that any

offers of dedication had been extinguished by the time that the City attempted to

accept them in 2020.  However, Instruction Memorandum 91-196 does not cite any

authority to support the statement about rights-of-way disappearing upon

termination, absent prior actual use, and the letter from BLM Spokane District

Office Border Field Manager Ms. Babcock repeating that assertion cites only to Instruction Memorandum 91-196.  ECF No. 14-5 at 2.  Instruction Memorandum 91-196 itself is internally inconsistent, as the Memorandum also states: "Upon issuance of a small tract patent, the Secretary is deprived of all rights to the lands except those specifically reserved to the United States. . . . The government has no legal power, except under eminent domain proceedings for some governmental purpose, to eliminate this restriction from the patent."  ECF No. 14-2 at 4.  One of the letters relied upon by Plaintiffs, the 2009 letter from BLM Spokane District Office District Manager Mr. Towne, reaffirms that "Once lands are patented the BLM has no legal authority to eliminate the reservation in the patents."  ECF No. 14-4 at 2.  Therefore, even if the Court were to afford significant weight to the content of Instruction Memorandum 91-196, the Court only could credit it as supporting Plaintiffs' desired conclusion, that the Termination Notice made the reservations of rights-of-way in the small tract patents "disappear," if the Court disregarded portions of the very same document.

The Court finds that Instruction Memorandum 91-196 lacks any significant power to persuade and is not owed the deference that Plaintiffs seek.  The pronouncements in the BLM Memoranda and letters that the federal government transferred any possessory rights to the land unless explicitly reserved when it executed the land patents are easily verified.  *See, e.g., Boesche*, 373 U.S. at 477.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S CROSS-MOTION ~ 18

1  Likewise, caselaw supports that the BLM "has consistently considered small tract

2  rights-of-way to be common law dedications to the public."  *McCarrey*, 301 P.3d at

3  568.  By contrast, the Court finds no corroboration in the authority cited by

4  Plaintiffs, or through independent research, that terminating Classification Order No.

5  5 reached back into preexisting land patents and vacated right-of-way reservations.

6  Plaintiffs rely on *McCarrey*, from the Alaska Supreme Court, to argue that

7  actual use is the dispositive factor, but *McCarrey* actually held that repeal of the

8  STA "did not terminate or revoke" the right-of-way at issue in the case because the

9  federal government already had sold the land before the STA was repealed.  301

10  P.3d at 567.  Moreover, the *McCarrey* court remanded for a determination of

11  whether the private owners of a neighboring lot to the small tract at issue had

12  accepted the valid offer of dedication in the federal land patent's right-of-way

13  reservation.  301 P.3d at 561.  *McCarrey* is contrary to Plaintiffs' position because

14  *McCarrey* supports that reservations of rights-of-way in STA land patents were not

15  affected by repeal of the STA, which is consistent with finding that preexisting

16  reservations of rights-of-way in land patents were not affected by declassification.

17  Ultimately, the Court returns to the plain language of the federal land patents

18  at issue, which provides that the United States' grant of the land to the original

19  buyers was "subject to a right-of-way not exceeding 33 feet in width, for roadway

20  and public utilities purposes" along the boundaries of the lots.  *See* ECF Nos. 12-3 at

21  2; 13-6 at 2.  The Court finds that the right-of-way reservation is explicitly stated,

and Plaintiffs have not shown that any subsequent action extinguished this reservation. *See Hash*, 403 F.3d at 1413.

### *Status of Offers of Dedication*

The question of whether a person has a compensable interest in property is a matter of state law. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 707 (2010) ("Generally speaking, state law defines property interests . . . ."); *Whispell Foreign Cars, Inc. v. United States*, 97 Fed. Cl. 324, 331 ("Whether an individual has a compensable private property interest is determined by state law."), *amended after recons. in part*, 100 Fed. Cl. 529 (2011); *see also Oregon v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378 (1977) ("Under our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States."); *Standage Ventures, Inc. v. Arizona*, 499 F.2d 248, 250 (9th Cir. 1974) (finding no federal question where the issue was "whether prior to issuance of patents to appellants under the Small Tract Act, 43 U.S.C. § 682, Arizona had obtained a 400-foot right-of-way across the lands under 43 U.S.C. § 932[,]" and there was no dispute as to the meaning or effect of either federal statute).

Therefore, having looked to federal law to resolve the question as to the effect of the Termination Notice on patents issued under Classification Order No. 5, the Court turns to Washington state law for whether Plaintiffs are entitled to compensation for a taking under either the federal or state constitutions. *See*

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION ~ 20

*Vandevere v. Lloyd*, 644 F.3d 957, 963 (9th Cir.2011) ( "[W]e look to state law to determine what property rights exist and therefore are subject to 'taking' under the Fifth Amendment.").

In Washington, a "common law dedication is the designation of land, or an easement on such land, by the owner, for the use of the public, which has been accepted for use by or on behalf of the public." *Richardson v. Cox*, 108 Wn. App. 881, 890 (Wash. App. Div. 3 2001). For a dedication to be valid, there must be: "(1) an intentional offer by the owner of real property, to appropriate the property, or an easement or interest in the land (2) to a public use and (3) acceptance of the offer, express or implied, by the public or public body." *Tiegs v. City of Richland*, No. 25430-5-III, 2008 Wash. App. LEXIS 190, at *6 (Ct. App. Jan. 24, 2008) (citing *City of Seattle v. Hill*, 23 Wash. 92, 97, 62 P. 446 (1900); *Donald v. City of Vancouver*, 43 Wn. App. 880, 885, 719 P.2d 966 (1986)). Washington law has long recognized that an offer of dedication may be revoked at any time before the public accepts the dedication, either formally or through actual use. *Spokane v. Sec. Sav. Soc'y*, 82 Wash. 91, 94 (1914). The party asserting that the dedication exists has the burden of establishing that all elements for a dedication have been satisfied. *Karb v. City of Bellingham*, 61 Wn.2d 214, 218–19 (1963).

The Washington Supreme Court has recognized all of the following as ways to accept an offer of dedication: (1) by an express act; (2) by implication from the acts of municipal officers; and (3) by implication from use by the public "for the

purposes for which the property was dedicated." *City of Spokane v. Catholic Bishop of Spokane*, 33 Wn. 2d 496, 503 (Wash. 1949) (finding acceptance through passage of a municipal ordinance).

Plaintiffs here argue exclusively that the reserved rights-of-way were not accepted by the public at any time before the Termination Notice was issued on November 18, 1981. *See* ECF No. 36 at 2. Apart from contesting that there was any offer of dedication for the City to accept in 2020, Plaintiffs do not dispute the validity of Ordinance 10-20 as a means of acceptance. *See id.* at 2, 11, and 14.

The patents for Plaintiffs' lots were executed in 1958 (Lot 121) and 1956 (Lot 123) and provided that the conveyance from the United States to the original buyers was "subject to a right-of-way not exceeding 33 feet in width, for roadway and public utilities purposes" along the boundaries of the lots. *See* ECF Nos. 12-3 at 2; 13-6 at 2. As the City merely accepted, through Ordinance 10-20, an offer of dedication open since the patents were first issued to prior owners of the lots, the Plaintiffs do not show that the City invaded any property interest that Plaintiffs have ever had in their properties. *See Carson Harbor Village Ltd. v. City of Carson*, 37 F.3d 468, 476 (9th Cir. 1994), *overruled on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) ("A landowner who purchased land after an alleged taking cannot avail himself of the Just Compensation Clause because he has suffered no injury. The price paid for the property presumably reflected the market value of the property minus the interests taken.").

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION ~ 22

In conclusion, the Court does not find any binding or persuasive authority to support that the offers of public dedication contained in the land patents conveying ownership of Lots 121 and 124 were revoked prior to the City's acceptance of them. Consequently, Plaintiffs do not show any property interest that has been taken from them to support either their federal or state unconstitutional taking and inverse condemnation claims.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 24**, is **GRANTED**.

3. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** January 26, 2022.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION ~ 23